# United States District Court

## For The District of Columbia

**UNITED STATES OF AMERICA**

**V.**

**SHAWN BERTRAM ARMSTEAD**
   DOB:   xxx x, 1971
   PDID:

**CRIMINAL COMPLAINT**

CASE NUMBER:

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  On or about ___July 31, 2008___ in ___Washington, D.C.___ county, in the _____ District of __Columbia__ defendant(s) did, (Track Statutory Language of Offense)

solicit bribes in return for being influenced in the performance of official acts and in return for being induced to do or omit to do any act in violation of his official duties, in violation of 18 U.S.C. § 201(b)(2)(A) and 18 U.S.C. § 201(b)(2)(C).

in violation of Title __18__ United States Code, Section(s) __201(b)(2)(A) and 201(b)(2)(C)__.

I further state that I am __Jay Greenberg, Special Agent with the Federal Bureau of Investigation__, and that this complaint is based on the following facts:

**See Attached Affidavit**

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Signature of Complainant
Jay Greenberg, Special Agent
Federal Bureau of Investigation

AUSA, Steven J. Durham   (202) 514-8316
Sworn to before me and subscribed in my presence,

_____   at   ___Washington, D.C.___
Date                                                  City and State

_____   _____
Name & Title of Judicial Officer              Signature of Judicial Officer

Affidavit in Support of a Criminal Complaint

I, Jay Greenberg, after being duly sworn, depose and state:

Introduction

I am a Special Agent employed by the Federal Bureau of Investigation and have been so employed for over 3 years. I am currently assigned to investigate public corruption, fraud, theft of government funds, and other related violations in the Washington Field Office in Washington, D.C.

This affidavit contains information necessary to support probable cause for this application. It is not intended to include each and every fact and matter observed by me or known by the government. The information provided is based on my personal knowledge and observations, information conveyed to me by other law enforcement officials, various government agencies, and my review of records, documents and other physical evidence obtained during the investigation of this case.

Relevant Statute

I present this affidavit in support of a criminal complaint charging Shawn Bertram Armstead (Armstead) with soliciting bribes in return for being influenced in the performance of official acts and in return for being induced to do or omit to do any act in violation of his official duties, in violation of 18 U.S.C. § 201(b)(2)(A) and 18 U.S.C. § 201(b)(2)(C).

The Parties

(1) Shawn Maurice Johnson

Johnson was born on xxxxxxx xx, 1970. Johnson is currently listed as a co-applicant on the lease for xxxx xxxxxx xxxxxx, xxxxxxxxx xxx, Laurel, Maryland. On the application for this lease, Johnson listed as his occupation District of Columbia Public Schools (DCPS) Special Police Officer (SPO). A review of the records for all District of Columbia SPOs confirms that Johnson is so employed and has been for all relevant periods of this investigation. Throughout

1

this employment, Johnson was a public official of the District of Columbia.

(2) Shawn Bertram Armstead

Armstead was born on xxx x, 1971. Armstead's Maryland driver's license lists xxxx xxxxxx xxxx, Laurel, Maryland as Armstead's address of residence. A review of the records for all District of Columbia SPOs confirms that Armstead is employed as a DCPS SPO and has been for all relevant periods of this investigation. Throughout this employment, Armstead was a public official of the District of Columbia.

Probable Cause - Solicitation of Bribes

An SPO with the DCPS Division of School Security is certified, and subsequently granted police powers, by the Metropolitan Police Department. An SPO can, among other duties, arrest individuals and/or enforce various laws and regulations of the District of Columbia. An SPO assigned to DCPS is responsible for policing school grounds and carrying out orders of the chain of command for this organization.

On or about July 2, 2008, a cooperating witness (CW) used various sports playing fields in the immediate vicinity of Eastern Senior High School (Eastern), 1700 East Capitol Street, Washington, D.C., for the purpose of operating a for-profit parking operation. CW, who was not affiliated with Eastern, was charging vehicles to park on school property for events that were held both on and off school property. On July 2, 2008, CW was approached by Johnson and Armstead, who advised that hosting the event at Eastern required approval from the DCPS Real Estate Office. Johnson told CW that the Chief of DCPS Security had sent Armstead and Johnson to Eastern to shut CW's operation down and that CW needed to get approval from the DCPS Real Estate Office to continue the operation. Before leaving, Armstead and Johnson gave their cellular telephone numbers to CW.

On July 3, 2008, CW went to the DCPS Real Estate Office. Cellular records indicate that CW called both Johnson and Armstead. CW invited them to the DCPS Real Estate Office with CW to confirm CW was approved for the operation at Eastern. Both Armstead and Johnson

2

declined the invitation. CW applied for and received an approved Use Agreement to participate in a soccer event and charge for parking at Eastern from July 3, 2008 through July 6, 2008. CW returned to Eastern and renewed the operation.

In the evening on July 3, 2008, Johnson and Armstead returned to Eastern. Johnson, in the presence of Armstead, told CW that they could shut down the parking operation. CW showed them an approved Use Agreement from the DCPS Real Estate Office. Johnson advised that there was a little known law that parking was not allowed at DCPS properties for events occurring off of school property and that Johnson and Armstead would shut down CW's parking operation unless CW paid them 25% of his profits. Because it was late at night on Thursday with Friday being a holiday, CW knew this decision could not be appealed until Monday. CW explained that CW could not give the officers 25% of the collected money but did pay Johnson and Armstead $120 in cash.

Johnson and Armstead took the $120 in cash and told CW they would return the next day, Friday, July 4, 2008. Johnson said they expected a much larger payment on Friday or they would shut down the parking operation. Johnson also threatened to impound the vehicle where CW was storing the parking proceeds and take all the money from the operation. While Johnson explained this, Armstead drew out his baton, expanded it, and tapped it threateningly on his own leg.

On July 4, 2008, CW ran the parking operation at Eastern, and neither Armstead nor Johnson came to collect payments.

On July 5, 2008, CW ran the parking operation at Eastern. Johnson contacted CW via cellular telephone around 8:30 p.m. Later that evening, Johnson and Armstead returned to Eastern and demanded a larger payment. CW negotiated the payment to Johnson and Armstead to $650 and paid them $660 in cash, as CW only had currency in denominations of $20. As part of the negotiations, CW told Johnson and Armstead that CW had future parking operations planned and would make larger payments in the future.

On July 12, 2008, Johnson contacted CW via cellular telephone and asked CW when the next event was planned. CW advised that it was August 1-2, 2008. Johnson expected CW to pay

Johnson to keep Johnson from shutting down the operation.

On July 17, 2008, CW called the FBI to report the solicitation of the bribes.  CW was interviewed on July 24, 2008 and agreed to work with the FBI.  On July 29, 2008, CW made two consensually-recorded telephone calls to Johnson in the presence of FBI agents.  CW brought up the operation planned for the weekend, and Johnson brought up the payment. After CW introduced the parking operation planned for the weekend, Johnson said, "Are you talking about. . . .as far as money go?"  CW confirmed the need to discuss the payment, and Johnson advised that Johnson needed to talk to his partner and then would discuss details with CW.  CW advised that he wanted them to agree on an amount ahead of time and that CW wanted to pay Johnson and Armstead ahead of the event as well.  Johnson agreed.  In a second consensually-recorded telephone call later that day, Johnson stated he had talked to his partner, who said they need, "$500 a piece for both days."  CW told Johnson that $1,000 was too much money and negotiated to pay them $650 total.  Johnson agreed and told CW to meet on Thursday, July 31, 2008 in the afternoon or early evening in front of Eliot Junior High School, which is near Eastern and located at 1830 Constitution Avenue NE, Washington, D.C.  CW confirmed the agreement that CW was paying Johnson and Armstead not to appear at Eastern in their official capacity, where the parking operation was planned, because it scared CW's co-workers and drew too much attention to CW's operation.  Johnson agreed that he and Armstead would not appear at Eastern in their official capacity.  As a DCPS SPO, Johnson's responsibilities included policing the grounds of DCPS properties.  Johnson confirmed that he was scheduled to be on duty on Thursday, July 31, 2008 and also over the weekend during the parking operation.

On July 31, 2008, CW made a consensually-recorded telephone call to Johnson in the presence of FBI agents.  During the call, Johnson and CW agreed to meet at 5:00 p.m. near Eastern.  Johnson confirmed that he expected the payment from CW to be in the amount of $650.  CW told Johnson that CW was unable to get a permit for this event from the DCPS Real Estate Office but that CW planned to run the event anyway.  Because this was an unauthorized event, CW asked Johnson and Armstead to "keep anyone off his back."  Johnson stated that he would try but that CW also needed to avoid attracting attention to the operation.  Johnson stated that last

4

time, CW's co-workers made a mistake by attempting to charge a school bus for parking at Eastern, and that drew attention to the operation. Johnson told CW to make sure CW's co-workers did not do anything such as that to call attention to the parking operation. Johnson stated, "We're straight, and as long as you handle your end, there won't be a problem."

On July 31, 2008 around 5:00 p.m., CW had a consensually-recorded meeting with Johnson and Armstead in the vicinity of Eastern in the District of Columbia. Additionally, FBI agents watched and recorded the meeting. CW waited in a parked car, and Johnson drove up and parked Johnson's car with Johnson's driver's window facing CW's driver's window. Armstead arrived behind Johnson in a Silver Dodge Charger with Maryland license plates 8EBZ03. CW asked Johnson, "Who's that behind you?" and Johnson replied, "That's my partner." CW handed Johnson $650 in cash and asked, "We're straight now, right?" Johnson replied, "We're straight." Armstead, who had remained in his vehicle, then drove into and around a parking lot near the meeting location. Looking at Armstead, CW asked, "What's he doing?" Johnson replied, "He's watching our back is all." CW said, "I might get some calls tomorrow. I'm not sure who." Armstead parked his vehicle, walked up to the area between the two driver's windows, and entered the conversation. After greeting Armstead, CW said, "My whole problem, my whole concern, is if I'm going to get some phone calls...." Armstead replied, "What happened last time? Nothing." Johnson said, "Don't worry about that. We got that. We got that." Armstead said, "We got you covered." CW then stated, "My problem is, I'm going to use that one too [referring to another field around Eastern], and I don't have paper for it. I don't want to bring attention. If something happens, just give me a heads up, and I'll deal with it, ok?" Johnson replied, "Alright." CW said, "Or try to handle it as you best can. That's all I'm asking you to do." Johnson said, "Alright." Johnson then confirmed they were on duty that evening and the next evening during the period for which CW was paying them to allow CW to continue the unauthorized parking operation.

Johnson took money from CW with the specific agreement that Johnson and Armstead were to provide cover to an unauthorized parking operation being conducted by CW on DCPS property. As part of their standard duties, Johnson and Armstead are to enforce DCPS

5

property regulations and keep unauthorized activity from occurring on those properties. Johnson and Armstead took this money in return for not carrying out their official duties.

<u>Identification</u>

The subscriber address for the cellular telephone number which Johnson provided to CW and which CW used for consensually-recorded conversations with Johnson is xxxx xxxxxx xxxxxx, xxxxxxxxx xxx, Laurel, Maryland. This is the same address which appears on Johnson's valid Maryland Driver's License. The photograph of Johnson on his Maryland Driver's License matches the photographs of Johnson which are contained in Johnson's SPO application. The date of birth as reflected on both Johnson's Maryland Driver's License and SPO application is identical.

The subscriber to the phone number Armstead provided to CW and to which CW placed calls is Paula Armstead. The Dodge Charger with Maryland license plates xxxZ03 is registered to Shawn Armstead, xxxx xxxxxx xxxx, Laurel, Maryland, which matches the address on Armstead's Maryland Driver's License. Armstead's Maryland Driver's License photograph matches the person seen by FBI agents during surveillance of the payment on July 31, 2008 near Eastern. The date of birth as reflected on Armstead's Maryland Driver's License and SPO application is identical.

6

Conclusion

Based on the foregoing, I believe that in July of 2008, in the District of Columbia, Shawn Bertram Armstead illegally solicited bribes in violation of 18 U.S.C. § 201.

Accordingly, I request that this Court issue a Criminal Complaint charging Armstead with this violation.

_____
Jay Greenberg
Special Agent
Federal Bureau of Investigation


Subscribed and sworn before me this\_\_\_\_\_ day of August, 2008.


_____
The Honorable
United States Magistrate Judge
Washington, D.C.

7